R. G. VARNER STEEL PRODUCTS, INC. *v.* PUTERBAUGH.

5-2439                                    349 S. W. 2d 805

Opinion delivered October 9, 1961.

*Bridges, Young & Matthews,* for appellant.

*McMillan & McMillan* and *L. Weems Trussell,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellant, R. G. Varner Steel Products Company, Inc. (hereinafter called "Varner"), was plaintiff in the Trial Court; and the appellee, Billy Puterbaugh, doing business as Puterbaugh Lumber and Supply Company (hereinafter called "Puterbaugh"), was defendant. Varner sued Puterbaugh for $666.01 as balance due on account. Puterbaugh admitted[1] the account, but cross-complained for $1,483.12, which he alleged was due him by Varner. Without objection, the Trial Court instructed a verdict for $666.01 for Varner on its complaint, but submitted to the jury the issues on Puterbaugh's cross-complaint.

Puterbaugh alleged—and testified in support of his claim—that Varner owed him the $1,483.12 in the cross-complaint as 5% commission due Puterbaugh on all Varner products sold in Puterbaugh's territory. Varner denied that there was any contract to pay Puterbaugh a commission. The evidence showed that Varner was engaged in the wholesale distribution of steel products

---

[1] While his answer contained a general denial, Puterbaugh testified in his discovery deposition that he owed Varner the $666.01.

and that Puterbaugh operated a retail lumber and supply business in Fordyce. In 1958 Varner and Puterbaugh had an agreement of some nature whereby Varner paid Puterbaugh a commission on some Varner products sold in Dallas County; but on May 27, 1959, Varner and Puterbaugh entered into a written contract, which provided in part:

"DEALER'S AGREEMENT: This agreement entered into by and between R. G. Varner Steel Products, Inc., Pine Bluff, Arkansas, and Puterbaugh Lumber and Supply, doing business in the trade area of Dallas, Cleveland, Calhoun and Bradley Counties in the State of Arkansas, for the purpose of defining conditions under which R. G. Varner Steel Products, Inc. grants the right of sale and promotion of its products to above firm for a period of one year from the date of execution.

"It is understood and agreed that you will resell, in the assigned territory outlined above, our production type buildings which are specified in our price data being furnished you under separate cover. . . .

"It shall not be our policy to make direct sales, but when in our opinion the circumstances indicate a departure from this policy, we may make or complete any sale direct or by any means through any channels we may elect. . . .

"It is agreed that you will purchase outright from us for resale. All buildings are sold f. o. b. our factory. Terms are subject to approval of our Credit Department. . . .

"*This agreement supersedes any previous agreements.*

"This agreement has been executed in triplicate, this 27 day of May, 1959." (Emphasis supplied.)

In August and September 1959 Varner sold steel materials to the Fordyce Apparel Company in Dallas County for the erection of a building. The net sale was $29,662.40, and Puterbaugh claimed 5% commission on

that sale. This is the item involved in the cross-complaint. As aforesaid, the issues of the cross-complaint were submitted to the jury; and the verdict was for Puterbaugh for $1,483.12. From a judgment on that verdict, Varner brings this appeal and presents three points.

I. *Varner's Instruction No. 6.* The Court refused to give Varner's Instruction No. 6, which reads as follows:

"Before you can find that the cross-complainant, Billy Puterbaugh, is entitled to recover anything from R. G. Varner Steel Products, Inc., on his cross-complaint, you must find first by a preponderance of the evidence that a duly authorized representative of the said R. G. Varner Steel Products, Inc. and Billy Puterbaugh entered into a valid agreement for the payment of a commission to said Billy Puterbaugh after the execution of the written dealer agreement dated May 27, 1959. If in your minds Billy Puterbaugh has failed to establish by a preponderance of the evidence the making of such an agreement, then your verdict must be for the plaintiff with regard to the cross-complaint."

This instruction should have been given, because the signed contract of May 27, 1959, as previously copied, contained these words: "This agreement supersedes any previous agreements." Puterbaugh claimed an agreement for a 5% commission was originally made in 1958; but in view of the quoted language above, Puterbaugh could not rely on any claimed contract made prior to May 27, 1959. We recognize that situations sometimes arise when the written contract does not contain the entire agreement between the parties; and in such instances testimony may be given and reliance placed on a previous oral contract. A recent case to such effect is *Lemm* v. *Sparks,* 230 Ark. 105, 321 S. W. 2d 388, in which we quoted from earlier cases.[2] But in the case at bar the written contract specifically stated that it

---

[2] To the same effect as our holding, see 20 Am. Jur. 988, "Evidence" § 1135; and 20 A. Jur. 992, "Evidence" § 1140.

"supersedes any previous agreements"; and, in the face of that language, Puterbaugh could not rely on any contract made with Varner prior to May 27, 1959, the date of the written contract.

For the refusal to give Varner's Instruction No. 6 the judgment is reversed and the cause remanded.

II. *Other Points.* In view of what has been said, and because of the possibility of a retrial, we think it proper to state that we find no merit in either of Varner's other assignments.

(A) Puterbaugh was permitted to testify that he assisted to a certain extent in obtaining the Fordyce Apparel Company contract for Varner. The objection to this testimony was that it was an effort to seek a recovery on *quantum meruit,* whereas Puterbaugh's claim was based on contract. The objection is not well taken. The Court, by instruction, told the jury that Puterbaugh's claim was based on an alleged contract. The allowed testimony was one of Puterbaugh's efforts to show that he acted because of a contract. There was no effort to claim *quantum meruit.*

(B) Varner claims that it was entitled to an instructed verdict because Puterbaugh proved no definite contract for a 5% commission made after the written contract of May 27, 1959. We find no merit in Varner's assignment on this point. While the evidence is not very strong as to any subsequent contract, still we cannot say that it was insufficient to go to the jury. At one place Puterbaugh testified:

"Q. I believe you testified and offered correspondence from Mr. R. S. McFarlane, dated October 28, 1959, which recognized the 5% commission on a sale of steel which you did not erect, is that correct?

"A. Yes, sir.

"Q. Now, was this transaction after the date of the written contract?

"A. Yes, sir.

"Q. So to summarize, here you have and have testified to one transaction before the written contract and one after the written contract, reflecting the 5% commission agreement which you made with Mr. Niceley?

"A. Yes, sir. . . .

"Q. Now, let's try to be a little more specific about this agreement for a 5% commission after you signed this agreement on May 27, 1959, did you have an oral agreement after that?

"A. Yes.

"Q. With whom?

"A. With Mr. Hatcher."

On cross examination Puterbaugh's testimony was considerably weakened; but we are unable to say that there was no substantial evidence to take the case to the jury on the matter of a subsequent oral contract.

### CONCLUSION

For the error in refusing to give Varner's Instruction No. 6 the judgment is reversed and the cause remanded.