## NAKDIMEN *v.* BRAZIL.

### Opinion delivered January 20, 1919.

1. JUDGMENT—CONSTRUCTION.—A judgment of a court must be construed with reference to the issues raised and evidence adduced to sustain issues.

2. JUDGMENT — CONSTRUCTION.—A decree awarding defendant a money judgment to be discharged if plaintiff tendered defendant a deed to certain land within a specified time should be construed in the light of the contract whereby plaintiff had agreed to convey the land and the facts and circumstances under which it was rendered.

3. VENDOR AND PURCHASER—STIPULATION AS TO TIME.—In determining whether stipulations as to time of performing a contract are conditions precedent, the court seeks simply to discover what the parties really intended; and if time appears, on a fair construction of the language under the circumstances, to be of the essence of the contract, the stipulations in regard to it will be held to be conditions precedent.

4. APPEAL AND ERROR—EFFECT OF APPEAL.—Where a contract to convey land did not make time of the essence of the contract, and the decree awarded a money judgment, to be discharged if a deed should be tendered within 60 days, and 90 days were given to prepare the bill of exceptions, equity will require appellee to accept a deed tendered within 60 days of affirmance of decree on appeal, although the appeal was not taken within 60 days after decree.

5. HOMESTEAD—OCCUPANCY.—Under Const. Okla., Art. 12, § § 1, 2, occupancy of land is necessary in order to impress it as a homestead.

6. HUSBAND AND WIFE—CONVEYANCE BY WIFE.—A married woman's conveyance of her land in which her husband did not join conveyed title under Rev. Laws, Okla., § 1143, where the land did not constitute a homestead.

Appeal from Sebastian Chancery Court, Fort Smith District; *W. A. Falconer,* Chancellor; reversed.

STATEMENT OF FACTS.

In 1916 Nakdimen brought suit against Brazil and the Midland Savings Loan Association. Among other things the court found that Nakdimen agreed to convey to Brazil a certain tract of land in Oklahoma of the agreed value of $3,000, and that Nakdimen refused to deliver a deed to the land according to the agreement. Upon such finding, on November 2, 1916, the court rendered a decree in favor of Brazil against Nakdimen, which among other recitals contains the following: "It is further considered, ordered, adjudged and decreed, that said R. E. Brazil have and recover of and from the plaintiff, I. H. Nakdimen, the sum of $3,105.36, being the agreed value of the land in Sequoyah County, Oklahoma, above described, together with the interest thereon at the rate of six per cent.

"It is further considered, ordered, adjudged and decreed that said judgment for three thousand one hundred and five and 36/100 dollars may be discharged by the plaintiff, I. H. Nakdimen, delivering to the defendant, R. E. Brazil, in open court on or before sixty days from November 2, 1916, a good and sufficient warranty deed,

conveying a good title to said R. E. Brazil to said above described land in Sequoyah County, Oklahoma.''

Nakdimen was given ninety days to file a bill of exceptions, which was done, and on April 27, 1917, 177 days after the decree was rendered, Nakdimen filed a *supersedeas* bond and duly prosecuted an appeal to this court. This court affirmed the decree of the chancery court. See *Nakdimen* v. *Brazil,* 131 Ark. 144.

Immediately after the affirmance, Nakdimen tendered a warranty deed to the land in controversy to Brazil, which the latter refused to accept.

Nakdimen also offered to put Brazil in possession of the property. At that time no one was in possession of or asserted any title or interest in the property.

Brazil caused execution to be issued upon the original judgment in his favor and Nakdimen thereupon filed a supplemental complaint, in the chancery court, setting up the above facts and further alleging that time was not in the essence of the tender of the deed and that Brazil, through his attorneys, had waived any question as to time of delivery prescribed in the original decree.

The complaint further alleged that Brazil had refused to accept the deed to the land, under the contract of purchase, and that, notwithstanding such refusal, he had conveyed the same to L. E. Prall. That Brazil was insolvent and non-resident of the State and if Nakdimen was required to pay the alternative judgment of $3,000, the same could not be recovered back from Brazil. That Prall was also a non-resident of the State, and held a deed from Brazil.

The prayer of the complaint was that Brazil be required to accept deed of conveyance and be enjoined from having the alternative judgment of $3,000 and interest thereon collected by the execution and be enjoined from having the property sold under the execution.

The answer admitted the original judgment and that an appeal had been taken thereon and affirmed by the Supreme Court as alleged in the complaint; admitted the tender of the deed by Nakdimen as alleged within less

than thirty days after affirmance of the judgment. But Brazil set up that the tender was not made within sixty days after the rendition of the original decree, as provided therein, and alleged that the filing of the supersedeas bond and the taking of the appeal, long after the sixty days had run, did not reinstate the privilege given in the decree of the lower court to tender a deed in satisfaction of the judgment.

Brazil alleged that the tender had been refused and denied that he had waived the requirement of the decree that the deed should be delivered within sixty days. He further alleged that the title to the land had been investigated by his attorney, who had refused to approve the same. He admitted that he had executed to Prall a deed to the land on the 4th of May, 1916, but alleged that Prall made no claim to the land after Nakdimen had instituted suit and he tendered with his answer a deed from Prall and his wife to Nakdimen. The allegations as to insolvency and non-residence were denied.

After hearing the testimony upon the issues thus raised the chancery court found: "that under the original decree in this cause Nakdimen had only sixty days from the rendition of the judgment to tender a deed to the Oklahoma land; that the provision of the original decree has not been waived by Brazil or his counsel; that the title to the land is not a marketable title. The court, thereupon, entered a decree refusing to quash the execution and dismissed the complaint for want of equity. From which decree is this appeal.

*Ira D. Oglesby,* for appellant.

1. Appellant complied with the original decree when he tendered a warranty deed to appellee. The lands conveyed were wild lands and not the homestead of Naki Baldridge. She therefore had the right to sell them without her husband joining in the deed. Occupancy of the homestead is necessary to impress the homestead character. Const., Okla., art. 12, secs. 1 and 2; 11 Okla. 233; 23 Iowa 208.

2. The suggestions that appellee could not be required to accept deed after expiration of sixty days from date of original decree is without merit. Time was not of the essence of the decree. The conveyance of property was the thing sought, and the tender of a good and sufficient deed was all that appellee was entitled to. The appeal to this court, upon supersedeas, had the effect to suspend the entire decree. 92 Ark. 211. Appellant could not tender his deed within the sixty days allowed and then appeal, as there would be nothing to appeal from.

3. Upon the affirmance of the decree, appellee treated the alternative judgment as still in force, and by conduct and words waived the question of time. 9 Cyc. 604-607. The sixty-day limit to make deed was an afterthought.

*Harry P. Daily,* for appellee.

1. Appellant did not tender his deed to appellee within 60 days in accordance with the court's decree, nor did he supersede the decree within that time. When this time elapsed, without supersedeas, the money judgment became fixed, and the judgment at the time of appellant's perfection of his appeal was for $3,105.36. The filing of the supersedeas leaves the matter in the condition in which it was when the supersedeas took effect. 93 Ark. 215. The supersedeas does not relate back to the date of the order so as to restore rights already lost. 47 N. W. 460; 73 N. W. 831; 83 N. W. 18; 22 Law. Ed. (U. S.) 226; 64 N. W. 312; 49 Cal. 72; 37 Sou. 523; 96 N. W. 742; 69 S. W. 714.

2. Appellee did not waive his right to enforce the money judgment after the affirmance of the decree.

3. The deed tendered contained a serious flaw; one that only could be cured by court decree. Appellant therefore did not have a marketable title. 66 Ark. 433; 11 Ark. 75; 85 Ark. 292; 120 Ark. 75.

The question of whether the husband of Naki Baldridge should have signed the deed was one of serious doubt. The Constitution of Oklahoma does not prescribe

occupancy of a rural homestead to impress the homestead character, and some doubt was expressed by Oklahoma attorneys as to whether this was a homestead. A rural homestead may consist of more than one tract, and actual occupancy is not necessary. 1 S. E. 897; 81 Am. St. Rep. 684; 19 Utah 161, 56 Pac. 973.

WOOD, J., (after stating the facts). It thus appears that there are two questions for decision.

*First.* Did appellee have the right to enforce money judgment in his favor against the appellant, because of the failure of the latter to tender a deed within sixty days from the time the original decree was rendered?

Appellee owned a valuable piece of real estate in the city of Fort Smith which he had mortgaged to the Midland Savings Loan Association to secure a loan of money in the sum of $15,000. Appellee sold and conveyed this real estate to the appellant. Part of the consideration for the conveyance was the assumption by the appellant of the mortgage debt of the appellee to the Loan Association, and the further consideration that appellant should convey to appellee a certain tract of land in Oklahoma.

After the contract between appellant and appellee for the sale and exchange of lands, a controversy arose between the Loan Association and Nakdimen, concerning the amount necessary to discharge the mortgage debt, which led to a suit being instituted by Nakdimen against the Loan Association to fix the amount of the indebtedness which he should pay on the mortgage by virtue of his contract with Brazil.

Brazil was made a party to the suit, and among other things in his answer he set up that Nakdimen had not only failed to comply with his contract to pay off the mortgage to the Loan Association, but had also failed to convey to appellee the Oklahoma lands. He made his answer a cross-complaint and asked that Nakdimen be required to convey the Oklahoma lands, "in accordance with the contract or pay the value thereof, the sum of $3,000."

It was upon these issues that the court rendered the original decree upon which appellee, after affirmance of same on appeal to the Supreme Court, had execution issued and which he was seeking to enforce by collecting the sum of $3,000 with interest.

Thereupon, Nakdimen as already stated, filed what is designated his supplemental complaint tendering his deed to the Oklahoma land instead of the money in satisfaction of the judgment, and which the appellee refused to accept, insisting upon the payment of money. He contended that the sixty days had already expired and that appellant had, therefore, lost the right to satisfy the original decree by the tendering of a deed.

Now the contract between the appellant and the appellee which formed the basis of the original decree, was for the conveyance by the former to the latter of the tract of land in Oklahoma. The contract did not specify that the deed was to be executed within a certain time, and time for the execution and delivery of the deed was not of the essence of the contract.

The appellee in his answer and cross-complaint for specific performance of the contract in that suit, prayed that Nakdimen be required *to convey the Oklahoma lands in accordance with the contract* or pay the value thereof, *et cetera.* He did not ask that time be made the essence of the decree and that unless the deed was made within that time the appellant should forfeit the privilege of making the deed.

The contract shows that only a deed to the land was contemplated and that the execution of the deed conveying good title to the land would have been a compliance with the contract.

The issues raised and facts developed in the suit in which the original decree was rendered, show that such was the primal object of the parties in entering into the contract. The decree of the court must be construed with reference to the issues raised and evidence adduced to sustain those issues.

When the original decree under review here is so interpreted, we are convinced that the manifest purpose of the chancery court, in rendering a money judgment with alternative privilege of satisfying the same by the execution and delivery of good and sufficient warranty deed in sixty days, was to effectuate the intention of the parties to the contract and insure the performance thereof within a reasonable time.

We must view the decree in the light of the contract and the facts and circumstances under which it was rendered. The principle applicable to the construction of the contract necessarily enters into and gives color to the recitals of the decree based upon it. The principle is well stated in 9 Cyc. p. 604-605, as follows: "In determining whether stipulations as to the time of performing a contract are conditions precedent, the court seeks simply to discover what the parties really intended; and if time appears, on a fair construction of the language and under the circumstances, to be of the essence of the contract, the stipulations in regard to it will be held conditions precedent. * * * * Time is of the essence of a contract when it is a material object to which the parties looked in the first conceptions of it." We conclude, therefore, that time was not of the essence of the original decree. Here the facts show that the appellee by the deed tendered, if the same conveyed a perfect title, would get what he and the appellant contemplated when they entered into the contract. Appellee was in no manner injured by the delay and a court of equity, in the absence of impelling language making time of the essence of performance, will not forfeit appellant's right to give the appellee what his contract stipulated. See 9 Cyc. 604-607.

The conclusion that time was not of the essence of the original decree and that neither the court nor the parties so regarded it is irresistible in view of the conduct of the parties after the decree was rendered. The court granted the appellant ninety days in which to prepare and file his bill of exceptions which it would not likely have done if the court had had in mind that the sixty days, speci-

fied in the decree for the appellant to tender "a good and sufficient warranty deed," was of the essence of the decree.

A preponderance of the testimony shows that the attorneys for the appellant and the appellee did not regard time as of the essence of the original decree, because after the decree of the lower court had been affirmed by the Supreme Court the attorney for the appellee in interviews with the attorneys for appellant left the latter under the impression "that if the title of the Oklahoma lands were approved by a certain attorney," Mr. Watts of Muldrow, Okla., "that there would be no further objection in closing the matter up by the acceptance of the deed to the lands by him, on behalf of his client."

It would unduly prolong the opinion to set out in detail the testimony of the attorneys bearing on this issue, but it suffices to state that it shows that although the sixty days by the original decree had long since expired, the attorneys for the appellant and the appellee were endeavoring to determine whether the appellant could still make a deed conveying a good and sufficient title. If the attorney for the appellee had considered time of the essence of the decree, doubtless after the expiration of the sixty days instead of encouraging the attorneys for the appellant to believe that his client might accept a deed conveying perfect title, he would have explicitly informed them that time was of the essence of the decree, and that since the time had elapsed for the tender of the deed, his clients would insist that the appellant had forfeited his right under the decree to convey the land instead of paying the money to satisfy the decree.

*Second.* Does the warranty deed tendered by the appellant to the appellee convey a good and sufficient title as required by the original decree?

The appellant deraigns title through the government from one Naki Baldridge, a Cherokee Indian, to whom the lands were allotted. Naki Baldridge was at the time a married woman. On August 11, 1918, by warranty

deed she conveyed the land in suit to the appellant. Her husband did not join her in the deed. The land was wild and neither Naki Baldridge nor her husband had done any acts to impress it with the character of a homestead.

As we construe the Constitution of Oklahoma, the occupancy of the homestead is necessary in order to impress the lands with the homestead character. Art 12, Secs. 1 and 2, Const. of Okla. See *Ball* v *Houston,* 11 Okla. 233. See also Const. Enabling Act, Oklahoma, Annotated (Williams), p. 159, and cases cited in note. It is not necessary, under the statutes of Oklahoma, unless the lands constitute the homestead, that the husband should join the wife in the conveyance of the wife's lands. See sec. 1143, Acts 1910 of Oklahoma.

We conclude, therefore, that under the Constitution and laws of Oklahoma, Nakdimen had "good and sufficient title" to the lands in controversy at the time of the tendering of his deed to the appellee and that the trial court erred in holding to the contrary.

The decree, for the errors indicated, is therefore reversed and the cause is remanded with directions to enter a decree requiring the appellee to accept the deed tendered by appellant and perpetually enjoining appellee from enforcing the decree in his favor by execution.