FITZJARRALD *v.* FITZJARRALD.

5-2350                                344 S. W. 2d 584

Opinion delivered March 27, 1961.

*Griffin Smith,* for appellant.

*Eldridge & Eldridge,* for appellee.

J. SEABORN HOLT, Associate Justice. This appeal challenges the chancellor's power to amend a divorce decree rendered in 1944. Eugene C. Fitzjarrald and Mary Elizabeth Fitzjarrald were divorced in Pulaski County on February 11, 1944. The decree rendered in the case made no mention of alimony or child support, although there was a minor child living that was born of the union. On September 16, 1960, some 16 years after the decree was rendered, Mrs. Fitzjarrald filed a petition which, after amendment, alleged that at the time the decree was entered it was her understanding that a contract of support which the parties had entered into was

incorporated in the decree. The contract was made an exhibit to the complaint. It was further alleged that the child had become an adult on April 2, 1960 and that appellant had not paid the child support agreed to in the property settlement. Judgment was sought for $2,750.00. The trial court modified the decree to include the child support agreement and the appeal here challenges the power of the court to do this.

It appears that there are two methods for amending or changing a final decree after the lapse of the court's term. One is represented by the terms of Ark. Stats., § 29-506 which sets out grounds for vacating or modifying judgment of a trial court after the term of the decree has lapsed. These grounds do not appear to be relevant here since the proceedings were not under the statute. The second method, applicable here, is the inherent power of the trial court to enter an order correcting its judgments where necessary to make them speak the truth and reflect its actions accurately. This inherent authority has been recognized and sustained by this court in a long line of decisions from *King & Houston* v. *State Bank*, 9 Ark. 185, to the present. This power is exercised by a *nunc pro tunc* order. It is confined to correction of record, to the extent of making it conform to the action which was in reality taken. It does not permit the change of a record to provide something that in retrospect should have been included. This court has no authority after lapse of the term time to revise a judgment, or to correct a judicial mistake, or to adjudicate a matter which might have been considered at the time of the trial, or to grant additional relief which was not in the contemplation of the court at the time the judgment or decree was rendered. In *Liddell* v. *Landau*, 87 Ark. 438, 112 S. W. 1085, we said: "The authority of a court to amend its record by *nunc pro tunc* order is to make it speak the truth, but not to make it speak what it did not speak but ought to have spoken", and in the more recent case of *Wright* v. *Ford*, 216 Ark. 55, 224, S. W. 2d 50, this court held that the common-law rule that no judgment can be amended after the term at which it is rendered has been

modified so that where the entry through some plain error fails to correspond with the judgment that was actually rendered, the court can at a later term correct the judgment, but there is no authority to revise a judgment, or to correct a judicial mistake, or to adjudicate a matter which might have been considered at the time of the trial, or to grant an additional relief which was not in the contemplation of the court at the time the judgment was rendered.

This well established rule rests on the sound policy that matters once litigated should be at an end, otherwise, a court's judgment or decree would be constantly open to attack. In the present case, the decree of the trial court below, from the language of the final order, attempted to adjudicate something which was not considered in the original decree.

Since this was not a *nunc pro tunc* order attempting to correct a clerical misprision or mistake, the judgment must be and is reversed and the cause remanded.