Merle A. REVES *v.* Estalee P. REVES

CA 86-312                                    730 S.W.2d 904

Court of Appeals of Arkansas
Division II
Opinion delivered June 10, 1987

178

180

*Stripling & Morgan,* by: *Dan Stripling,* for appellant.

*John C. Aldsworth,* for appellee.

JAMES R. COOPER, Judge. The parties in this divorce case were married for approximately 23 years when the appellee filed her complaint for divorce on February 13, 1984. Prior to a formal hearing on the complaint, the parties reached an agreement. At a hearing held on April 5, 1984, the terms of the agreement were read into the record. A consent decree based upon the agreement, and approved by both parties' attorneys, was filed on May 2, 1984. On November 4, 1985, the appellee filed a petition to execute the terms of the decree, alleging that the parties could not comply with the May 1984 consent decree. On January 10, 1986, the appellee filed a motion for temporary maintenance and child support. After a hearing on March 3, 1986, the chancellor entered a decree substantially different from the consent decree of May 2, 1984. The March 1986 decree required the appellant to pay child support in the amount of $200.00 per month. The appellant failed to pay child support as ordered, and, after a hearing on May 5, 1986, he was found to be in willful contempt of

court. From that order, and from the decree of March 3, 1986, comes this appeal.

For reversal, the appellant contends that the chancellor erred in requiring him to pay child support; in amending the 1984 consent decree to eliminate the appellee's obligation to pay the appellant $5,000.00 from the proceeds of the sale of a 230-acre tract of land; in failing to secure for the appellant a coin collection that was part of the property subject to the 1984 agreement; in ordering an automobile sold and the proceeds divided; in ordering that a brass bed and the proceeds from the sale of a bull be divided equally between the parties; and in holding the appellant in contempt of the March 1986 order to pay child support. We affirm in part, and reverse in part.

The May 1984 consent decree awarded custody of the parties' three minor children to the appellee, and provided that the appellant would have no right of visitation, and no duty to pay child support. The decree further provided that a 230-acre tract of real property held by the parties as tenants by the entirety would be sold to a third party pursuant to an existing contract of sale for a cash purchase price of $65,000.00. The appellant was to receive $5,000.00 out of the proceeds of the sale, and the appellee was to receive all of the remaining proceeds, minus costs of the sale, attorneys' fees, and satisfaction of an outstanding mortgage on the property. The decree provided that, in the event the contract for the sale of the property was not performed, the parties would take all necessary steps to preserve the full value of the property, and would sell the real property as expediently as possible. With respect to a house and 3/4 of an acre of real property acquired during the marriage, the decree required the appellant to quitclaim his interest therein to the appellee so that full legal title should be vested in her. The appellee was to retain all of the household furniture, appliances, etc., with the exception of certain power tools, books, and magazines that were to be retained by the appellant. A herd of approximately 44 head of cattle was to be sold by the appellee at the best market price obtainable at the earliest possible date; the appellant was to receive $2,500.00, and the appellee was to retain all the remaining cattle, or the proceeds thereof. The appellant was to retain the entire family coin collection and a 1972 GMC pickup truck, while the appellee was to retain a 1968 pickup truck. Finally, the decree

provided that "the court retains control of this cause for such further orders and proceeds [sic] as may be necessary to ascertain definitely, and enforce, the rights of the parties hereto in the property herein referred to."

The record reveals that the parties were unable to carry out the provisions of the May 1984 consent decree. The 230-acre tract did not sell pursuant to the contract of sale that had been in effect at the time the May 1984 decree was rendered. Moreover, a subsequent offer and acceptance agreement for the sale of that property failed as well, because the terms of that agreement were not acceptable to the appellant. The division of the proceeds of the sale of the cattle was frustrated when the parties could not agree upon who was responsible for satisfaction of a $2,150.00 lien against the cattle. The appellee contended she had not been aware of this debt at the time the May 1984 consent decree was entered. Finally, the record shows that the coin collection, which the appellant was to retain under the terms of the May 1984 decree, was never delivered to the appellant, but instead had been sold by the parties' grown children. The parties' daughter, Karen, sold some of the coins, and used the proceeds to buy a refrigerator for the appellee. Doug, the parties' son, sold the remaining coins, and purchased a 1972 automobile with the proceeds. Doug kept the 1972 automobile for himself, and gave his own 1981 pickup truck to the appellee.

On November 4, 1985, the appellee filed a petition to execute the terms of the May 1984 decree. Subsequently, she moved for maintenance and child support. A hearing was held on March 3, 1986. In a decree of March 20, 1986, the chancellor found that circumstances arising after the issuance of the May 1984 decree prevented that decree from being carried out completely, but he affirmed the terms of that decree and stated his intent to follow them in spirit. He also found that both parties had been guilty of contemptuous behavior regarding the disposition of marital property: the appellee, by virtue of her failure to prevent Karen and Doug from disposing of the coin collection; and the appellant, for failing to disclose the $2,150.00 lien on the cattle, and for refusing to sign the second offer and acceptance agreement for the sale of the 230-acre tract.

The most salient differences between the May 1984 decree

and the decree of March 1986 were that, under the terms of the latter decree, the appellant was no longer to receive $5,000.00 from the sale of the 230-acre tract; the appellant was ordered to pay child support in the amount of $200.00 per month; the appellant was to receive only $420.00 from the appellee as credit for the disposition of the coin collection, and was to pursue any further remedy for the loss of the collection against Karen and Doug, who had sold it; and the parties were to divide equally the proceeds of a bull, which the appellant had sold subsequent to the parties' separation, but prior to the issuance of the May 1984 decree. Finally, the chancellor ordered that a Lincoln automobile and a brass bed were to be sold at public auction, and the proceeds divided equally between the parties.

The appellant subsequently failed to pay child support as required by the March 1986 decree. In an order filed May 5, 1986, the chancellor found him in contempt, and ordered him to be taken into custody until he purged himself of the contempt by paying the child support arrearages, court costs, and attorney's fees.

The appellant initially contends that the chancellor erred in requiring him to pay child support. He argues that the chancellor lacked the authority to amend the decree to include a support order, and that, in any event, there was no showing of changed circumstances that would justify the award of child support. We do not agree.

With respect to the appellant's argument concerning the chancellor's authority to amend the decree to provide for child support, the general rule is that the court cannot alter or modify an independent contract, incorporated and made part of the divorce decree. *McInturff* v. *McInturff*, 7 Ark. App. 116, 644 S.W.2d 618 (1983). An exception to the general rule exists with respect to independent contracts dealing with child support and child custody: such provisions are generally not binding on the courts. *Id.*, 644 S.W.2d 618. Nevertheless, when the parties execute a property and support settlement agreement in which the provisions dealing with property, debt, alimony, and child support constitute reciprocal considerations the court cannot later alter or modify the decree based on such an independent contract unless the parties have provided for or agreed to the

modification. *Id.*, 644 S.W.2d 618. The question of the authority of the chancellor to modify the parties' agreement to provide for child support in the instant case thus involves a two-step analysis: first, was the agreement between the parties which was read into the record at the April 5, 1984, hearing an "independent contract," and, second, if an independent contract existed, was it an "integrated agreement" in which the property, debt, alimony, and child support provisions constituted reciprocal consideration?

██ The Arkansas cases dealing with the chancellor's authority to modify the alimony and child support provisions of a decree based upon an agreement between the parties distinguish between two types of agreements: an "independent contract," and a "less formal" agreement. The significance of the distinction was pointed out in *Seaton* v. *Seaton*, 221 Ark. 778, 255 S.W.2d 954 (1953):

> Our decisions have recognized two different types of agreement for the payment of alimony. One is an independent contract, usually in writing, by which the husband, in contemplation of the divorce, binds himself to pay a fixed amount or fixed installments for his wife's support. Even though such a contract is approved by the chancellor and incorporated in the decree . . . it does not merge into the court's award of alimony, and consequently . . . the wife has a remedy at law on the contract in the event the chancellor has reason not to enforce his decretal award by contempt proceedings.

> The second type of agreement is that by which the parties, *without making a contract that is meant to confer upon the wife an independent cause of action*, merely agree upon 'the amount the court by its decree should fix as alimony'. [Citations omitted.] A contract of the latter character is usually less formal than an independent property settlement; it may be intended merely as a means of dispensing with proof upon an issue not in dispute, and by its nature it merges in the divorce decree.

221 Ark. at 780, 255 S.W.2d at 955-56 (emphasis supplied). Our review of the cases leads us to the conclusion that the question of the existence of an independent contract, as opposed to a mere

informal agreement, turns upon the intent of the parties; if they intend that there should be an independent remedy at law upon the agreement in the event that equity declines to enforce its provisions, then the agreement is an independent contract. If, however, the parties merely agree upon the amount to be paid without intending to create an independent cause of action based on the agreement, the agreement is an informal one which the chancellor may modify without doing violence to contractual rights.

■■ Our conclusion that the intent of the parties is the controlling factor in distinguishing between independent contracts and informal agreements is borne out by *Law* v. *Law*, 248 Ark. 894, 455 S.W.2d 854 (1970). In *Law*, the Supreme Court held that the burden of proving that the agreement was an independent contract was on the party so asserting, and, noting that the agreement in that case was not reduced to writing, and was evidenced only by the recitals in the decree, stated that there was nothing in the decree to indicate that the agreement was intended to be anything other than a stipulation as to the amount that the court should fix for alimony; i.e., there was no evidence that the agreement was intended to create an independent cause of action. That the intent of the parties is the determinative factor in distinguishing independent contracts from mere informal agreements is also demonstrated in *Songer* v. *Songer*, 267 Ark. 1075, 594 S.W.2d 33 (Ark. App. 1980). The decree in *Songer* made detailed provisions for alimony, child support, and the division of property. However, when a petition to modify the decree was subsequently presented, the chancellor held that the alimony portion of the decree was not subject to modification because he "had nothing to do with" the division of property. *Id.* at 1076, 594 S.W.2d at 34. We reversed and remanded that case for a determination of whether the decree should be modified, noting that "there is nothing, written or otherwise, showing *intent that any agreement be enforceable separately from the decree.*" *Id.* at 1077, 594 S.W.2d at 35 (emphasis supplied). A final case indicating that the test for distinguishing between an independent contract and an informal agreement is the intent of the parties to create an independently enforceable contract is *Armstrong* v. *Armstrong*, 248 Ark. 835, 454 S.W.2d 660 (1970), in which the Supreme Court upheld the chancellor's finding of an

independent contract. In so doing, the Court examined the provisions of the agreement to determine whether they indicated that the parties would have expected the provisions to be subject to subsequent modification; e.g., the Court found the provision of alimony for life or until remarriage to indicate an independent contract, because, under an alimony order entered by the chancellor in the absence of an independent agreement, the amount of alimony payable could be modified or reduced to zero should the wife later become independently wealthy. Likewise, a provision requiring the husband to repay a loan made to him by his wife was seen as indicative of an independent contract, because "it could not have been contemplated that the court would have the right to relieve the appellant of this obligation." *Id.* at 840, 454 S.W.2d at 663. The *Armstrong* Court concluded its inquiry into the particulars of the agreement with the statement that "[t]hese provisions are referred to as a matter of showing that the parties, when entering into their agreement, desired an independent contract that could be enforced in a court of law as well as in chancery." *Id.*, 454 S.W.2d at 663.

The agreement between the parties in the case at bar is not evidenced in writing, but rather was read into the record at the hearing of April 5, 1984. The agreement made no provision for alimony, and, although there were detailed provisions for the division of marital property, many of these provisions were never carried out. The appellant bears the burden of proving that the agreement constituted an independent contract. *Law* v. *Law, supra.* To prevail under the authorities discussed above, he must show that it was the intent of the parties to create an independent cause of action at law in the event that equity declined to enforce the decree. The intent of the parties to create a contract is a question for the finder of fact. *R.G. Varner Steel Products, Inc.* v. *Puterbaugh,* 233 Ark. 953, 349 S.W.2d 805 (1961).

Although chancery cases are tried *de novo* on appeal, the chancellor's findings of fact will not be reversed unless they are clearly against the preponderance of the evidence. *Pennybaker* v. *Pennybaker,* 14 Ark. App. 251, 687 S.W.2d 524 (1985). We review the testimony in the light most favorable to the appellee, and indulge all reasonable inferences in favor of the decree. *Gooch* v. *Gooch,* 10 Ark. App. 432, 664 S.W.2d 900 (1984). In the case at bar the record contains testimony by the

appellant which, if believed, would tend to show that he consented to give the appellee a larger share of the marital property in exchange for her agreement that he would not be required to pay child support. However, the decree in which the agreement was embodied provided that the chancery court would retain control of this action for further orders and proceedings as might be necessary to further ascertain and enforce the parties' rights in the property disposed of, which indicates that the parties were willing to look to the chancery court for the enforcement of their rights, rather than pursue an action at law in circuit court. Nowhere in the record is there any clear-cut indication that the parties intended to create a separately enforceable cause of action at law to enforce their agreement. Under these circumstances, and giving due regard to the superior position of the chancellor to assess the credibility of the parties, we hold that the chancellor could properly find that the parties entered into an informal agreement, as opposed to an independent contract. As no independent contract was involved, the chancellor had the authority to modify the decree to provide for child support. *Law* v. *Law, supra; McInturff* v. *McInturff, supra.* Our resolution of this issue makes it unnecessary to decide whether an integrated agreement of the type described in *McInturff* existed.

The appellant next contends that the award of child support was improper because the appellee failed to show a sufficient change in circumstances to justify such an award. We disagree. Although the appellant correctly states that increased child support may be awarded only upon a showing of a sufficient change in circumstances, *Glover* v. *Glover*, 268 Ark. 506, 598 S.W.2d 736 (1980), we think that such changed circumstances were present in the case at bar. There was evidence that the failure of the 230-acre farm to sell and the resulting deadlock between the parties created an unanticipated lack of support for the parties' children. Viewing the evidence in the light most favorable to the appellee, we find that the chancellor's finding of changed circumstances was not clearly erroneous. In light of our findings that the chancellor had the authority to modify the decree, and that the finding of changed circumstances is supported by the evidence, we hold that the chancellor did not err in ordering the appellant to pay child support.

The appellant next contends that the chancellor erred

in amending the May 1984 decree to eliminate the appellee's obligation to pay the appellant $5,000.00 out of the proceeds of the 230-acre tract. He cites *Harrison* v. *Bradford,* 9 Ark. App. 156, 655 S.W.2d 466 (1983), for the proposition that the chancellor lacked authority to set aside or modify the May 1984 decree. The decree at issue in *Harrison* recited that the property rights of the parties had been settled, and specifically provided for the disposition of various property. The property rights mentioned in the decree, however, were not at issue in *Harrison.* Instead, the controversy in that case revolved around the parties' rights to a sixteen-acre tract not mentioned in the decree. We held that, under those circumstances, the chancellor erred in modifying the decree to determine the parties' respective interests in the sixteen-acre tract, because the chancellor lacked authority to modify the decree after the lapse of the term of court in which the decree had been entered. Although terms of court have been abolished, this limitation on the power of a court over its final decrees was carried over in ARCP Rule 60(b), which permits the trial court to modify an order or decree within 90 days of its having been filed with the clerk. *Id.,* 655 S.W.2d 466.

The record in the case at bar indicates that the chancellor's intent in modifying that portion of the decree relating to the division of the proceeds of the sale of the 230-acre tract was not to deprive the appellant of his entire $5,000.00 share awarded in the earlier decree, but instead was to reduce that award by the amount of the lien on the cattle which the appellant failed to disclose at the time of the original agreement. We think that the situation presented in the case at bar is to be distinguished from the circumstances of *Harrison.* While the sixteen-acre tract in *Harrison* had never been mentioned in the chancellor's decree, the May 1984 decree in the case at bar specifically provided for the sale of both the 230-acre tract and the cattle. We find it significant that the May 1984 decree did not simply divide the tract and the cattle in kind between the parties, but instead ordered that this property be sold, with the proceeds of the sale to be divided between the parties at some future date. The situation thus resembles that presented in *Carter* v. *Olsin,* 228 Ark. 629, 309 S.W.2d 328 (1958), in which the trial court had ordered a party to replace a fence, and fixed the date for compliance beyond the expiration date of the term of court in which the order was

issued. The *Carter* Court held that the order to replace the fence was, in effect if not in fact, in the nature of a mandatory injunction, and that, under such circumstances, the trial court did not lose control or jurisdiction with the lapse of the term of court. 228 Ark. at 632-32; *see also Hardy* v. *Hardy*, 217 Ark. 296, 230 S.W.2d 6 (1950). We hold that the portion of the decree in the case at bar ordering the sale of the 230-acre tract and the cattle was an interlocutory order in the nature of a mandatory injunction, and that the chancery court thus retained jurisdiction with respect to those matters. However, our review of the record leads us to the conclusion that the chancellor's intent in modifying this portion of the decree was not to deprive the appellant of the entire $5,000.00 proceeds of the sale, but rather was to reduce that award by $2,150.00, the amount of the lien on the cattle. We therefore modify the decree to provide that the appellant is to receive $2,850.00 out of the proceeds of the sale of the 230-acre tract.

As his third point, the appellant contends that the chancellor erred in not fully compensating him for the loss of the coin collection which he was to retain under the terms of the May 1984 decree. The evidence reflects that the appellee did not deliver the coin collection to the appellant after the 230-acre tract failed to sell. She stated that she retained the collection after the sale fell through because she "knew that he wouldn't give [her] anything." Subsequently, the parties' daughter, Karen, sold some of the coins for $420.00, and used the proceeds to buy a refrigerator for the appellee. Doug, the parties' son, subsequently sold the remaining coins for $1,073.35. He bought an automobile for himself with the proceeds, and gave his own pickup truck to the appellee. Doug testified that he picked up the coins from the appellee's house. The appellee admitted that she knew what Doug intended to do with the coins when he took them from her house, but that she did not try to prevent him from taking them. In the March 1986 order, the chancellor ordered that the appellee was to credit the appellant $420.00 for the disposition of the coin collection. We note that in his March 1986 decree, the chancellor found the appellee to be guilty of contemptuous conduct for failing to prevent Karen and Doug from disposing of the coin collection.

■ The chancellor's award of $420.00 to the appellant

was based upon his finding that the appellee benefitted from the sale of the collection to that extent. While we agree that the extent to which the appellee benefitted from the sale is a significant consideration in the resolution of this issue, our *de novo* review of the record leaves us with the firm conviction that the award of only $420.00 to the appellant is an inequitable result. We think that the appellee also benefitted from the proceeds of Doug's sale of a portion of the collection, and that benefit is evidenced by the fact that he gave his own pickup truck to the appellee after buying another vehicle with the proceeds of the sale of the coins. Moreover, the record shows that the coins were kept as security after the 230-acre tract did not sell, and that the appellee knew of Doug's plans to remove the coins from her residence and sell them, yet failed to deter him from doing so. That the appellee could have prevented Doug's sale of the coins is reflected in the chancellor's finding that she was guilty of contemptuous conduct for failing to prevent Doug from taking the coins from her residence. While we find that the chancellor properly adopted the appraisal value of the coins as the correct measure of valuation, we hold that he erred in failing to require the appellee to fully reimburse the appellant for the collection's loss. We therefore modify the decree to require the appellee to credit or reimburse the appellant in the amount of $1,493.35 for the loss of the collection, instead of the $420.00 set out in the March 1986 decree.

Next, the appellant asserts that the chancery court did not have the power to order a Lincoln automobile sold which was owned by the parties prior to the May 1984 decree. We agree. The May 1984 decree does not mention this automobile, although it specifically provided for the disposition of two other vehicles owned by the parties, and there is nothing in the record to indicate that the need to dispose of the Lincoln was called to the chancellor's attention at the time of the original hearing. To the contrary, the chancellor plainly stated in his March 1986 order that the disposition of the Lincoln was not taken into account in the original decree. Under these circumstances, we think that the chancellor's modification of the May 1984 order to provide for the disposition of this automobile was erroneous.

Rule 60(b) of the Arkansas Rules of Civil Procedure limits a trial court's authority to modify a decree to a period

of 90 days after it has been filed with the clerk. Although ARCP Rule 60(a) permits trial courts to correct their judgments, this power is confined to correction of the record to make it conform to the action which was actually taken at the time, and does not permit a decree or order to be modified to provide for action that the court, in retrospect, should have taken, but which in fact it did not take. *Harrison* v. *Bradford, supra*; ARCP Rule 60(a). Rule 60(c) of the Arkansas Rules of Civil Procedure permits a judgment to be vacated or modified after the expiration of the 90-day period, but the record does not reflect the establishment of any of the grounds set out in Rule 60(c) for modifying the prior order of the court with respect to this issue, and there was no compliance with subsection (1) of that rule, which permits the vacation of judgment and the granting of a new trial on the ground of newly discovered evidence upon a motion for a new trial filed not later than one year after discovery of the grounds, or one year after the judgment was filed, whichever is earlier. No such motion for a new trial was filed by the appellee in the case at bar; instead, she petitioned the trial court to execute the terms of the May 1984 decree, and requested reexamination and modification of it. This petition was filed in November 1985, over one year from the filing of the May 1984 decree. In the absence of a timely motion, the chancellor lacked the authority to adjudicate the parties' rights in the Lincoln automobile under the authorities cited above. That portion of the March 1986 decree providing for the sale of the Lincoln and the division of the proceeds between the parties is therefore reversed.

The appellant's contention that the chancellor erred in ordering the division of the proceeds from a bull sold by the appellant after the parties' separation, but prior to the May 1984 decree, requires similar treatment. Because the bull was sold prior to the issuance of the decree, it was not part of the herd given to the appellee under the terms thereof. As in the case with the Lincoln automobile, the parties' rights to the proceeds from the bull's sale simply were not before the chancellor for adjudication when the original decree was issued. Moreover, the appellee does not allege that the appellant fraudulently concealed the fact of the sale, but merely contends on appeal that he failed to notify her after selling the bull. Under these circumstances, grounds for modifying the decree after the expiration of the 90-day period are

absent, and the appellee failed to timely move for a new trial on the grounds of newly discovered evidence. ARCP Rule 60; *see also Harrison* v. *Bradford, supra.* We therefore hold that the chancellor lacked the authority to order the division of the proceeds of the sale of the bull, and we remand this cause to the chancellor with instructions that he enter an order restoring the proceeds of the sale of the bull, and the Lincoln automobile, or the proceeds of the sale thereof, to the appellant.

The appellant also argues that the chancellor lacked the authority to order the sale of a brass bed. Because the appellee has stipulated on appeal that this bed is the appellant's property under the terms of the agreement upon which the original decree was based, we hold that the brass bed is the appellant's property, and order that he be allowed to take possession of it, if he has not yet done so.

Finally, we reach the appellant's contention that the chancellor erred in finding him in contempt of that portion of the March 1986 decree requiring him to pay child support in the amount of $200.00 per month. The appellant does not deny that he failed to make the support payment as ordered, but contends that the evidence was insufficient to support a finding that he willfully disobeyed the court's order.

██ Imprisonment of a divorced husband for failure to pay child support is permitted only in cases where the defendant has the ability to pay, but has willfully disobeyed the order to pay child support. *Nooner* v. *Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983). In the case at bar the appellant testified that he lacked the funds with which to make the required payments, and that he had last had income in June 1985. He also stated that, although he had formerly done sheetrock work, he was no longer able to do so because he was disabled. However, there was also evidence presented to show that the appellant received no disability benefits; that he was an experienced real estate salesman; and that he made no attempt to make even a partial payment of child support subsequent to the March 1986 order. On these facts, and giving due regard to the chancellor's superior position to assess the credibility of the witnesses, we cannot say that the chancellor's finding that the appellant willfully failed to comply with the order requiring him to pay child support was clearly erroneous.

194

Affirmed in part.

Reversed and remanded in part.

CRACRAFT and JENNINGS, JJ., agree.