John E. LORD and Sue F. Lord *v.* O.B. MAZZANTI, Ann
Mazzanti, Gwendolyn Manning, Margaret Burns, Larry Miller,
Shirley Jean Porter, Ida Rossini, Pat Jackson, and June Blagmon

99-163                                                2 S.W.3d 76

Supreme Court of Arkansas
Opinion delivered October 21, 1999

*James W. Haddock, P.A.*, by: *James W. Haddock*, for appellants.

*Bridewell & Bridewell Attorneys*, by: *Laurie A. Bridewell*, for appellees.

TOM GLAZE, Justice. This case arose from a neighborhood dispute over John and Sue Lord's moving a mobile home onto their property in the Lakewood Estates No. 1 Subdivision to Lake Village. The mobile home was to serve as their dwelling. O. B. and Ann Mazzanti and other property owners (hereafter collectively referred to as the Mazzantis) in Lakewood Estates No. 1 objected to the Lords' mobile home, stating it violated the subdivision's bill of restrictive covenants. Unpersuaded by the Mazzantis' assertions, the Lords continued with plans to make the mobile home their dwelling, causing the Mazzantis to file this suit in Chicot County Chancery Court.

On August 27, 1997, the Mazzantis sought an injunction ordering the Lords to remove their structure and to pay the Mazzantis' attorneys' fees. The Lords answered, denying the Mazzantis' claims, and after a full trial on January 9, 1998, the chancellor entered his order with findings of fact and conclusions of law in favor of the Mazzantis on June 10, 1998. The Lords filed a notice of appeal and obtained a timely extension to docket their appeal to December 1, 1998, past the ninety-day-limitation requirement provided in Ark. R. App. P. —Civil 5(a). However, when December 1 came, the Lords dismissed their appeal.

It was on or about December 1, 1998, that the chancellor became aware that his original decree of June 10, 1998, contained clerical errors. He corrected the errors by entering an amended decree, which he signed on December 1, 1998, and entered on December 3, 1998. In short, the chancellor's original decree contained internal inconsistencies, whereby the first page of the decree accurately identified the Lords as the defendants, finding that their property was subject to the Lakewood Estates restrictive covenants; however, on page two, the plaintiffs Mazzantis were mistakenly identified as the defendant owners of the mobile home and ordered to remove it. The decree also erred in ordering the Mazzantis, who were the prevailing plaintiffs, to pay the Lords' attorney's fees. In his amended decree, the chancellor merely caused his decree to reflect the original findings of fact and conclusions of law filed on June 10, 1998, which found that the Lords had breached subdivision restrictive covenants and ordered them to remove their dwelling. The chancellor's amended decree further corrected the original decree to show the Lords as losing party defendants and ordering them to pay the Mazzantis' $2,500.00 in attorneys' fees.

The Lords bring this appeal from the chancellor's December 3 amended decree, arguing generally that the chancellor had no authority under Ark. R. Civ. P. 60(a) to amend or modify his decree after ninety days had passed since its entry.[1] In support of their argument, the Lords cite our cases of *Ross v. Southern Farm Bureau Cas. Ins. Co.*, 333 Ark. 227, 968 S.W.2d 622 (1998), and *Phillips v. Jacobs*, 305 Ark. 365, 807 S.W.2d 923 (1991). The Mazzantis rejoin, citing Arkansas precedents extending back over one hundred and fifty years that hold that trial courts have the inherent authority to correct a decree to accurately reflect the judgment that was actually rendered. *See Rossi v. Rossi*, 319 Ark. 371, 892 S.W.2d 246 (1995) (a trial court may "enter an order *nunc pro tunc* when the record is being made to reflect that which occurred but was not recorded due to a misprision of the clerk"); *Fitzjarrald v. Fitzjarrald*, 233 Ark. 328, 344 S.W.2d 584 (1961) (holding that "where the entry through some plain error fails to correspond with the judgment that was actually rendered, the court can

---

[1] In his amended decree, the chancellor refers to Rule 59(a) of the Rules of Civil Procedure as authority to correct typographical errors, but it is clear Rule 59(a) is not applicable for such purposes and Rule 60(a) is the rule at issue.

at a later term correct the judgment"); *King & Houston v. State Bank*, 9 Ark. 185 (1848) (noting the "authority of the court . . . to amend in whatever may be necessary to make the record speak the truth"); *Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983) (the court has power "to correct the record to the extent of making it conform to the action which was in reality taken at the time").[2]

In 1979, this court adopted Ark. R. Civ. P. 60, specifically Rule 60(a) in issue here, which continues Arkansas's settled practice of allowing a trial court to correct clerical errors at any time. Our Rule 60(a), which is identical to Fed. R. Civ. P. 60(a),[3] reads as follows:

> *Clerical mistakes* in judgments, orders or other parts of the record and errors therein arising from oversight or omission *may be corrected* by the court *at any time* on its own motion or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court. (Emphasis added.)

Rule 60(a) is merely a restatement of Arkansas's well-settled law, empowering the trial court to enter *nunc pro tunc* judgments to cause the record to speak the truth, whether in criminal or civil cases. *See Lovett v. State*, 267 Ark. 912, 591 S.W.2d 683 (1980); *McPherson v. State*, 187 Ark. 872, 63 S.W.2d 282 (1933); *Richardson v. State*, 169 Ark. 167, 273 S.W. 367 (1925). Just recently we upheld a trial court's authority to enter an order *nunc pro tunc* in a criminal case when more than a year and a half had passed since the original judgment had been filed and mandate had issued. *McCuen*

---

[2] The Mazzantis also cite the case of *VanCamp v. VanCamp*, 333 Ark. 320, 969 S.W.2d 184 (1994), in support of their argument, but, as the Lords point out, this court in *VanCamp* upheld the trial court's original decree because the parties had previously contractually bound themselves to post-majority child support to send their children to college, and this court held their contract was binding and enforceable as any other contract. Rule 60 was not utilized in reaching a decision in this divorce case. Instead, the *VanCamp* court, applying settled contract law in divorce cases, concluded that opposing parties both had to assent to any changes before any contract could be modified.

[3] This court chose *not* to adopt provision (b) of the Federal Rules of Procedure, finding the federal rule would be an unwelcome departure from existing Arkansas law and detract from the stability of final judgments. In this vein, the court explained that the distinction between intrinsic and extrinsic fraud as a basis for relief from a judgment is considered an important and desirable one. *See* Reporter's Notes to Arkansas Rule 60.

*v. State*, 338 Ark. 631, 999 S.W.2d 682 (1999). While we noted in *McCuen* that Rule 60(a) itself does not specifically refer or apply to a criminal case, it is obvious that Rule 60(a) does apply to civil cases, and its plain language adopts the same longstanding rule utilized in all cases — that trial courts may correct clerical errors *at any time*. In these circumstances, a trial court's power to correct mistakes or errors is to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. *See Chastain v. Davis*, 294 Ark. 134, 741 S.W.2d 632 (1987); *Fitzjarrald*, 233 Ark. 328, 344 S.W.2d 584; *Reves v. Reves*, 21 Ark. App. 177, 730 S.W.2d 904 (1987), *overruled on other grounds*, 26 Ark. App. 37, 759 S.W.2d 570 (1988).

   ■ As already noted above, Fed. R. Civ. P. 60(a) is identical to Arkansas's Rule 60(a), and the federal courts have reached the same conclusion we have, namely, that the rule permits the correction of clerical mistakes and that the power may be exercised at any time, either on motion or on the court's own initiative, so the judgment or record will be made to speak the truth but not made to say something other than what originally was pronounced. *See* 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2854 (2d ed. 1995). *See also, American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133 (1958) (quoting the "at any time" language of the federal rule and noting that "it is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors"); *Pattiz v. Schwartz*, 386 F.2d 300 (8th Cir. 1968) (lower court within its power to act a full five years after entry of its original order because what it "was effectuating ... was nothing more than the correction in the formal record of a gap or error arising from oversight or omission, within the definite and positive language of Rule 60(a)'s first sentence.... [I]ts action ... result[ed] simply in the record speaking the truth").

   ■ Even though the Lords concede the chancellor in the instant case merely corrected clerical errors, they ask us to ignore Arkansas's common-law rule and the clear wording of Rule 60(a) and urge us to hold the chancellor erred when making the corrections. Basically, the Lords contend the ninety-day limitation contained in Rule 60(b) should also apply to clerical mistakes mentioned in Rule 60(a). Unquestionably, a trial court has broad authority to correct *nonclerical* mistakes or errors so as to prevent the

miscarriage of justice if the court does so within ninety days of the filing of its decree or order. However, to read provision (b) to include clerical mistakes would not only render meaningless the "at any time" language in provision (a), but such a construction would also conflict with the common-law rule discussed above.

As previously noted, the Lords rely heavily on this court's decisions in *Phillips* and *Ross*. These two decisions are distinguishable, since neither one involved clerical mistakes. While neither case controls the situation now before us, both opinions contain errant language that requires overruling, and we do so in this decision.

We first address *Phillips*, and again point out that it did not involve clerical mistakes; instead, it concerned a trial court's belated granting of a plaintiff's request for new trial. The *Phillips* court held the trial court lost jurisdiction to grant a new trial because it failed to comply with the dictates of Ark. R. App. P. – Civil 4(b)(1)[4]. The defendant in *Phillips* also argued that, because Ark. R. Civ. P. 60(b) authorized a trial court to act within ninety days to prevent the miscarriage of justice, the trial court had power to grant a Rule 59 new trial motion, so long as it did so within the ninety-day limitation period contained in Rule 60(b). This court rejected this argument. The *Phillips* court stated that the Rule 60 miscarriage of justice language governed mistakes, errors, and fraud in obtaining the judgment, which are distinct and apart from those grounds substantially affecting the material rights of a party set out in Rule 59. While unnecessary to the decision, the *Phillips* opinion added, "the reference to certain miscarriages of justice in rule 60(b) is a reference to those clerical errors or mistakes described in rule 60(a)." 305 Ark. at 367, 807 S.W.2d at 925. This sentence simply is a misstatement of how provisions (a) and (b) relate to one another. As already discussed, provision (b) makes no mention of "clerical mistakes," and clearly the mistakes or errors or the prevention of the miscarriage of justice in (b) must be made within ninety days from entry of the trial court's decree or order. "Clerical mistakes" under provision (a) can be corrected at any time. In sum, while *Phillips*

---

[4] At the time of the *Phillips* decision, the provisions dealing with filing motions for new trial and filing notices of appeal were contained in Rule 4(c) of the Rules of Appellate Procedure

does contain some unfortunate dictum that requires overruling, the case turned on facts and issues simply not applicable here.

We next discuss *Ross*, where our court cited and relied on the errant language of *Phillips* in reaching its decision. Again, *Ross* did not involve a clerical mistake. There, plaintiff Jerry Ross initiated suit against defendants Troy Osbourne and Clay Vanoven for negligence, and later joined Southern Farm Bureau Insurance Co., alleging the insurance company would be liable under Ross's underinsured motorist coverage. Ross settled his claims with Osbourne and Vanoven, and an order was entered dismissing all claims with prejudice. Later, it was realized that the effect of the order included the dismissal of Ross's claim against Southern Farm Bureau. Although ninety days had passed since the trial court's original order of dismissal, a "corrected order of dismissal with prejudice," dismissing only Osbourne and Vanoven was entered. The *Ross* court held the trial court lost jurisdiction to amend its dismissal order since the ninety-day limitation period provided under Rule 60(b) had elapsed. The court further stated that, while it harbored some doubt whether Ross's error in this case could be characterized as "clerical," this court, citing *Phillips*, stated the ninety-day requirement in Rule 60(b) also applies to "clerical errors."

This court's holding in *Ross* was correct, but it is because the error there was not a clerical one as provided in Rule 60(a); instead, the error was a nonclerical one, which was subject to the ninety-day limitation in Rule 60(b). Simply put, when the trial court entered its original order of dismissal, it made no mention or adjudication of Ross's claim against Southern Farm Bureau. Such a situation is in stark contrast with the facts now before us where the chancellor entered his correct findings of facts and conclusions of law at the same time he filed his decree, wherein he had mistakenly transposed the parties' names.

In conclusion, here there was neither a motion for new trial under Rule 59, as in *Phillips*, nor an erroneous dismissal of any party, as in *Ross*. The mistake here was indisputably a clerical error. Our courts have always had the inherent authority to enter an order *nunc pro tunc* to correct such mistakes and to make the record speak the truth. Therefore, the chancellor's amended decree correcting the original decree was proper and his ruling is affirmed. To the

extent the language in *Phillips* and *Ross* indicates otherwise, that language is overruled.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. This is a particularly difficult case, because it is obvious that a clerical error was committed by the trial court in the original decree. But that is no reason for this court to reverse its interpretation of its own rules and throw precedent to the four winds. To do so simply dilutes the common law and places this court in the posture of deciding cases involving our rules on an *ad hoc* basis. I would not reverse the long line of recent authority on the point that the ninety-day time limit set out in Rule 60(b) applies to clerical errors in Rule 60(a). My preference would be to correct the clear error in the decree at this level by interpreting the obvious ambiguity. For that reason, I concur in the result.

Rule 60(a) and (b) read:

> (a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own motion or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

> (b) *Ninety-Day Limitation.* To correct any error or mistake or to prevent the miscarriage of justice, a decree or order of a circuit, chancery or probate court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

Ark. R. Civ. P. 60(a) and (b).

That this court is disregarding its precedent is beyond dispute. Since 1991, there have been six cases handed down where we referred to the fact that the ninety-day time limit in Rule 60(b) applied to the correction of clerical mistakes in judgments. *See Ross v. Southern Farm Bureau Cas. Ins. Co.*, 333 Ark. 227, 968 S.W.2d 622 (1998); *United S. Assur. Co. v. Beard*, 320 Ark. 115, 894 S.W.2d 948 (1995); *Pugh v. St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 877

S.W.2d 577 (1994); *Ingram v. Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993); *Reis v. Yates*, 313 Ark. 300, 854 S.W.2d 335 (1993); *Phillips v. Jacobs*, 305 Ark. 365, 807 S.W.2d 923 (1991). (Even the dissenters in this case agreed that the inherent power of the trial courts to amend their judgments was limited to ninety days from judgment). The court of appeals has understood this and followed our decisions. *See, e.g., Tyer v. Tyer*, 56 Ark. App. 1, 937 S.W.2d 667 (1997). This interpretation of Rule 60(a) and (b) is so established that it has found its way into former Justice David Newbern's treatise, ARKANSAS CIVIL PRACTICE & PROCEDURE § 16-4, ¶ 2.1. (Supp. 1998).

That "clerical mistake" in Rule 60(a) is what is embraced within "any error" in Rule 60(b) is perhaps best stated in *United S. Assur. Co. v. Beard, supra*:

> Under Rule 60(b), a party may move to correct any error or mistake or to prevent the miscarriage of justice by requesting the trial court to set aside its decree or order within ninety days of its having been filed. This court has narrowly interpreted Rule 60(b) to apply only to those situations provided in Rule 60(a), namely, to correct clerical mistakes in judgments, orders or other parts of the record and errors arising from oversight or omissions. *See Pugh v. St. Paul Fire & Marine Ins. Co.,*317 Ark. 304, 877 S.W.2d 577 (1994); *Ingram v. Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993); *Jackson v. Arkansas Power & Light*, 309 Ark. 572, 832 S.W.2d 224 (1992); *Phillips v. Jacobs*, 305 Ark. 365, 807 S.W.2d 923 (1991). Here, Southern failed to assert in its Rule 60(b) motion a clerical mistake, error or omission referred to in Rule 60(a), and for that reason alone, Southern's motion should have been denied by the trial court. *Cf. Pugh*, 317 Ark. at 308, 877 S.W.2d at 579.

320 Ark. at 118, 894 S.W.2d at 950.

In addition, in *Ross v. Southern Farm Bureau Cas. Ins. Co., supra*, we said:

> There is some doubt whether the error in this case is properly characterized by the parties as "clerical." Whether it was a clerical error or some other type of oversight, Rule 60(b)'s ninety-day limit on modification applies, and the Trial Court lost jurisdiction to amend the order of dismissal ninety days after the September order was entered.

333 Ark. at 231, 968 S.W.2d at 624.

The majority today has now reversed this interpretation of Rule 60(a) and (b) and given open-ended jurisdiction to the trial courts to correct clerical errors. While that might have been an alternative route of interpretation in 1991, our caselaw now runs counter to it.

We, of course, could interpret the trial court's decree at this level and resolve the ambiguity. The decree at issue in this case is inherently contradictory. It begins with findings against the defendants which correspond to the trial court's previous letter opinion. It then substitutes "plaintiffs" for "defendants" and enters judgment against the plaintiffs. That this is merely a clerical error is supported by the fact that it is the defendants who appealed from the decree.

There is no doubt that this court has the authority to interpret ambiguous judgments. *See, e.g., Magness v. McEntire*, 305 Ark. 503, 808 S.W.2d 783 (1991). In *Magness*, as in the present case, the judgment of the trial court was ambiguous. There, it was difficult to determine whether the judge's order was an order of summary judgment or a dismissal order. We said:

> How then are we to interpret the ambiguous order of the trial court dated June 22, 1989? As a general rule, judgments are construed like any other instruments; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. We have followed this general rule stating that judgments should be reviewed by looking to the judgment itself, pleadings, and any evidence presented. *Webb v. Herpin*, 217 Ark. 826, 233 S.W.2d 385 (1950); *Young v. Gurdon*, 169 Ark. 399, 275 S.W. 890 (1925); *Nakdimen v. Brazil*, 137 Ark. 188, 208 S.W. 431 (1919). Most recently, this court has applied this rule in *Arkansas State Bank Comm'r v. Bank of Marvell*, 304 Ark. 602, 804 S.W.2d 692 (1991). There, we stated that in interpreting a lower court's order, "[w]hile we look to the language in which [the] order is couched, we also look to whether the evidence supports [the] ruling...." *Arkansas State Bank Comm'r*, 304 Ark. at 607, 804 S.W.2d at 694 (*citing Nakdimen v. Brazil*, 137 Ark. 188, 208 S.W. 431 (1919)).

305 Ark. at 506, 808 S.W.2d at 784-785. I would follow the direction of *Magness* and interpret the decree to read as the trial court obviously intended.

It is dangerous to disregard the principle of *stare decisis* for rule interpretation because we have a difficult case to decide. That destabilizes the common law and wreaks havoc on practicing attorneys who seek guidance from precedent and strive to follow our rules. I would follow precedent and interpret the ambiguous decree at this level. For these reasons, I concur in the result.