IN THE MATTER OF Kimberly Anne PORTER,
An Incompetent

88-315                                    765 S.W.2d 944

Supreme Court of Arkansas
Opinion delivered February 27, 1989
[Rehearing denied March 27, 1989.]

*Richard B. Dahlgren,* Ass't Gen. Counsel, Department of Human Services Office of General Counsel, for appellant.

*Steve Inboden,* for appellee.

DAVID NEWBERN, Justice. This is a guardianship case. The State of Arkansas appeals a probate court decision that the guardian of the ward's estate may not use money represented by a certificate of deposit (CD) owned by the ward to reimburse medicaid payments which had been made and were to be made for the ward's care. The first issue presented is whether there was subject matter jurisdiction in the probate court to determine how the principal of the CD was to be used. We hold the probate court had jurisdiction of the guardianship and authority to approve or disapprove the guardian's expenditure of the fund represented by the CD. The second issue is whether there was sufficient evidence to support the court's decision that the fund could not be used by the guardian to reimburse the state for medicaid assistance to the ward. We find the state has misperceived and mischaracterized the decision made by the probate court. The insufficiency of the evidence argument is directed to an issue not decided and thus is unavailing. The state also argues that the guardian was estopped to assert that the fund could not be used because of her failure to disclose it when she initially applied for medicaid assistance. We decline to address that issue as it was not raised at the trial. *Polnac-Hartman & Assoc.* v. *The First Nat. Bank,* 292 Ark. 501, 731 S.W.2d 202 (1987).

Patsy Smith is the mother of Kimberly Anne Porter (Kim). Kim is a cerebral palsy victim who is severely retarded and requires extensive professional care. At the time of the proceedings below Kim was 14 years old but was described by Mrs. Smith as having the mental development of a child six months old. Mrs. Smith was appointed guardian of Kim's person and estate by the Poinsett County Probate Court. When the guardianship was established, Kim's estate consisted of the $30,000 CD in question here and a checking account containing cash accumulated from social security benefits and interest from the CD. The CD was funded from life insurance proceeds from Kim's deceased father's estate.

The guardianship order provided that Kim's social security benefits and the interest from the CD could be used by Mrs. Smith to meet Kim's needs but that the principal of the certificate of deposit could not be invaded without court approval.

When Kim grew too big for Mrs. Smith and her husband to care for at home, Mrs. Smith applied to have her placed in the Conway Human Development Center, an agency of the Arkansas Department of Human Services, and she applied for financial assistance through medicaid. Prior to 1987 she signed two application forms on which she listed Kim's assets but did not include the CD. On her 1987 application, however, she listed the CD and was told that she was not entitled to future medicaid financial assistance and would be responsible for the assistance already rendered. Some $47,000 had been spent by medicaid on Kim.

Mrs. Smith appealed the ruling through administrative channels and petitioned the probate court for a determination whether the CD principal could be used for medicaid reimbursement. The State of Arkansas, which is the medicaid provider, using state and federal funds, became a party to the petition before the probate court. Mrs. Smith's position in the probate court was that the court should rule that the CD money could not be thus used.

The probate court ruled that the CD principal is "inaccessible to the guardian for the purpose of payment to or reimbursement of the Conway Human Development Center or Medicaid for benefits provided or to be provided to the ward. . . ."

### 1. Jurisdiction

The appellant, the State of Arkansas, contends the probate court lacked jurisdiction of the issue because it was pending before administrative agencies from which an appeal to the circuit court would lie. Mrs. Smith's position is that only the probate court can decide to release the money which is the subject of the guardianship.

We have not been given references to the regulations governing medicaid eligibility. The state's argument, however, conveys the idea that one is not eligible for medicaid assistance when there are assets at one's disposal in excess of a certain value.

Testimony of an official of the Conway Human Development Center put that maximum value at $1,900. The argument specifically is that the guardian, Mrs. Smith, has not exhausted the administrative remedies she initiated to review the ruling against the estate, including appeal to the circuit court as provided in Ark. Code Ann. § 25-15-212 (1987). It is contended that, if it is allowed to stand, the probate court decision will be res judicata thus frustrating the statutory power of the circuit court to review the administrative decision. If, as we discuss below, the administrative decision whether the CD is "accessible" for medicaid reimbursement involves elements such as whether the guardian has made an effort to obtain the funds, the probate court decisions will not be a bar to that decision. We do not read the probate court's order to interpret or construe the federal law regarding medicaid reimbursement requirements.

Neither are we persuaded by the state's citation of *UHS of Arkansas, Inc.* v. *Charter Hosp. of Little Rock, Inc.*, 297 Ark. 8, 759 S.W.2d 204 (1988). There we required a chancery court to transfer to the circuit court a case in which a declaratory judgment had been sought with respect to the same issues pending in a circuit court proceeding. In that case neither court had been assigned exclusive jurisdiction by statute of the issues in question. In the case before us now, the circuit court may ultimately have to determine the issue of Kim's eligibility for medicaid. Apparently one factor in that decision will be whether the fund represented by the CD is "accessible" to Kim's guardian for the purpose of reimbursement of medicaid payments.

■ The circuit court's power to review and conclude, subject to appeal, whether the money in the CD is "accessible" under whatever state or federal regulations may apply does not mean that the circuit court has the authority to determine how a guardian is to use a ward's funds. That decision lies exclusively within the jurisdiction of the probate court according to Ark. Code Ann. § 28-65-107(a) (1987) which provides: "The jurisdiction of the probate court over all matters of guardianship, other than guardianships ad litem in other courts, shall be exclusive, subject to the right of appeal." Another statute, Ark. Code Ann. § 28-65-310(c)(3) (1987), deals with the probate court's authority to invade the principal of a minor ward's estate to provide for support.

In *Arkansas Dept. of Human Services* v. *Donis*, 280 Ark. 169, 655 S.W.2d 452 (1983), it was made clear that a circuit court decision with respect to the "accessibility" of funds of a ward, in the context of deciding eligibility for medicaid and food stamp benefits, may depend on a decision to be made by another court having jurisdiction and direct responsibility for expenditure of the funds in question. The mother of two children whose father was the victim of a wrongful death had been appointed conservator of the children's estates in a New Mexico proceeding. Each of the children had some $4,800 remaining from the wrongful death recovery. The Arkansas state agencies concerned determined that the children were not entitled to medicaid or food stamp assistance due to the existence of these funds and the absence of any court imposed limitations on the use of them. The only limitation imposed by the court had been the requirement that the money not be spent without a court order. The circuit court reversed the administrative ruling and held that the funds were subject to court-ordered limitations and thus not available to the mother to use for the childrens' support. We reversed the circuit court, and our opinion stated:

> No *court imposed limitations* have been placed on *her use* of those funds, other than that she must obtain court permission *to remove* them from the savings accounts. She has not sought the court's permission. The burden is upon her, the applicant, to demonstrate these funds are inaccessible. She has not met the burden of showing that the trust funds are inaccessible within the meaning of subsection ii, 7 CFR § 273(e)(8), *supra*.

> With respect to the eligibility for medicaid, the critical regulation is § 3332.2(13) of the appellant's Medical Services Manual, which supplements 42 CFR § 436.840. It states in pertinent part: "Whether the principal of a trust is resource depends on its availability to the applicant." As we have stated, the New Mexico court order makes the savings accounts available to the appellees upon approval of a petition for the removal from the accounts. Furthermore, a beneficiary's interest in a trust can be properly counted for the purposes of determining medicaid eligibility. See *McNiff* v. *Olmsted County Welfare Department*, 176 N.W.2d 888 (Minn. 1970). In the

> circumstances, it follows that the trial court erred in holding that the savings accounts are not available to the appellees. [Emphasis in original.]

It must be noted that our decision in the case resulted from appeal of a circuit court review of the question of accessibility of funds in the context of deciding eligibility for food stamps and medicaid under the regulations then extant. It was not an appeal from a guardianship, conservatorship, or trust order. The very point of the case was that the mother of the children had not made application to the court which had established the conservatorship to be permitted to use the funds for everyday support of the children.

While the *Donis* case is indicative that the circuit court has jurisdiction to make the accessibility decision it does not suggest that the court which had established the conservatorship was without jurisdiction to determine how the children's money would be spent. To the contrary, the suggestion of the opinion is that the circuit court's decision might well be dependent upon a decision in the court which had established the conservatorship if the conservator had made an effort to obtain permission to use the funds for the childrens' support and failed.

We have been given no reason whatever to question the statutory assignment of exclusive jurisdiction of the probate court of matters involving the guardianship of the estate of an incompetent. Given our determination that the probate court has exclusive jurisdiction to govern the release of funds in Kim's guardianship estate, we turn to focus on that court's decision.

## 2. Sufficiency of the evidence

The state's argument on this point is that our decision in *Arkansas Dept. of Human Services* v. *Donis, supra,* requires a showing by the guardian that she has attempted to obtain release of the funds to make them accessible for medicaid reimbursement and that she has made no such attempt here. Mrs. Smith argues she sought the appropriate court order but that it would have been hypocritical of her to have urged the release of the funds in view of her feeling that Kim would need the money in the future.

The parties have argued the issue as if the decision being made in the probate court were like the circuit court decision in

the *Donis* case, that is, whether the CD fund is "accessible" under the medicaid regulations. That question was not before the probate court, but was under consideration in administrative channels and may ultimately be decided on review in the circuit court. Again, we have not been cited to any of the current regulations or laws governing this issue, but we speculate that the issue in the administrative and circuit court proceedings may turn out to be whether Mrs. Smith has made an effort to get the funds released. In *Steinberg* v. *New York State Dept. of Social Services*, 90 Misc.2d 547, 394 N.Y.S.2d 763 (1977), a trust beneficiary, who was an applicant for medical assistance through New York social services, declined to seek an order permitting invasion of the corpus. The court held:

> Until a bona fide effort has been made by the petitioner to seek an invasion of the Trust created for her benefit as may be permitted by law, she may not be considered a person who "requires" public assistance and the respondents, rightfully, so determined. The petition is dismissed and judgment may be entered accordingly. The petitioner, of course, may again seek relief in this Court should she exhaust her remedies under section 7-1.6 of the EPTL.

We cite and quote from this case only to show the nature of the issue which may arise before the circuit court where the question may be whether there is evidence to show that an effort or a good faith effort has been made by Mrs. Smith to obtain release of the CD money for use in reimbursement of medicaid payments. The state seems to argue that that decision has been made in the probate court. It has not, and therefore we reject the state's insufficiency of the evidence argument, as it is addressed to an issue not decided by the probate court.

### Conclusion

We conclude the probate court had exclusive jurisdiction to entertain the petition to determine how the funds of the ward would be used. We are not persuaded by the argument that the evidence was insufficient to support the probate court's decision because the state's brief misperceived the issue before the probate court. We have, therefore, been given no reason to reverse.

Affirmed.

HICKMAN and GLAZE, JJ., concur.

HAYS, J., dissents.

DARRELL HICKMAN, Justice, concurring. I think I agree with the majority opinion, but its holding is not clear to me. I fear it will not be clear to the probate and circuit judges.

At an administrative hearing, it was determined that the guardian would have to reimburse the medicaid program for $48,000.00 in benefits received. That ruling was appealed to the circuit court. Not liking that decision, the guardian petitioned the probate court to, in effect, shield the $30,000.00 CD from any circuit court order.

The general statement that the probate court has exclusive jurisdiction in guardianships is, of course, true, but it does not answer the question presented in this case. A probate court cannot interfere with the jurisdiction of another court. In this case, the circuit court has jurisdiction over the central question—whether the existence of the CD renders the ward ineligible for medicaid benefits.

I would find the probate court order in error. I think the majority does also, insofar as it would take from the circuit court the right to decide whether this $30,000.00 must be surrendered under federal regulations.

GLAZE, J., joins the concurrence.

STEELE HAYS, Justice, dissenting. On March 18, 1986, Mrs. Patsy Smith petitioned the Probate Court of Poinsett County for her appointment as guardian of the person and estate of her daughter, Kimberly, and the appointment was made on that same date. The estate included a $30,000 certificate of deposit.

Mrs. Smith's appointment was conditioned on her furnishing a corporate surety bond in the amount of $30,000 or furnishing evidence of an agreement with the bank issuing the CD that no funds would be removed from the CD without prior approval of the probate court, a routine step authorized by Ark. Code Ann. § 28-65-215 (1987).

This litigation arises because Mrs. Smith applied to the Department of Human Services (Department) to provide care

and residency for Kimberly at the Conway Human Services Center and on June 30, 1986, Kim was accepted. Mrs. Smith requested long term care and assistance and completed a questionnaire which failed to reveal that the assets of Kim's estate included the $30,000 CD. Based on the nondisclosure of the CD, Kim was declared eligible for Medicaid benefits to which the Department asserts she would not otherwise have been entitled.

When the true facts were disclosed in a second questionnaire the following year Medicaid benefits were terminated and reimbursement was requested of the guardian. Mrs. Smith asked for an administrative hearing and the denial of benefits was upheld. Mrs. Smith then appealed to the circuit court where the case is now pending.

At this stage in the proceedings, Mrs. Smith filed in the Poinsett Probate Court a pleading entitled "Petition For Order Nunc Pro Tunc" asking the court to determine "nunc pro tunc until June 30, 1986," whether the CD was available for expenses incurred by the Conway facility and for reimbursement of funds received from Medicaid.

The probate court reserved judgment on the issue of whether it could enter its order nunc pro tunc, but held without explanation that the funds were inaccessible for payment to, or reimbursement of, the Conway Human Development Center. The Department of Human Services has appealed to this court and the majority now holds that the Probate Court of Poinsett County has exclusive jurisdiction over the subject matter of this dispute, effectively leaving the primary proceedings in limbo. I respectfully disagree with that conclusion and would reverse.

It is clear that the "Petition For Order Nunc Pro Tunc" was a maneuver to deprive the circuit court of subject matter jurisdiction over a proceeding which was properly pending before it. It is equally clear that the probate court had no jurisdiction to grant the requested relief, i.e. enter an order "nunc pro tunc until June 30, 1986," under the guise of a nunc pro tunc procedure. While under ARCP Rule 60(a), clerical mistakes in orders may be corrected at any time, such corrections are plainly limited to matters which were dealt with initially but which were omitted by oversight or mistake. While courts have the inherent authority to enter orders correcting errors, the power is confined to making

them conform to the action which was in reality taken at the time. *Fitzjarrald* v. *Fitzjarrald*, 233 Ark. 328, 344 S.W.2d 584 (1961). Since it cannot be seriously contended that the probate court did anything on June 30, 1986, the date of Kimberly's admission at the Conway facility, the relief requested by the guardian, i.e. a nunc pro tunc ruling, was nonexistent under the law. Thus, the guardian's resort to the probate court was patently to head off the possibility of an adverse determination by the circuit court, which clearly had jurisdiction over the subject matter and the parties.

While I would not contend the probate court does not ordinarily have jurisdiction to determine how a ward's estate will be used, in the rather unusual context of this case, I believe the circuit court's jurisdiction was paramount, and the proper course for the probate court was to defer to the circuit court, at least until that proceeding was concluded.

In *City of Cabot* v. *Morgan*, 228 Ark. 1084, 312 S.W.2d 333 (1958), this Court has soundly criticized attempts by one court to assume jurisdiction over matters pending in another court where concurrent jurisdiction exists:

> We condemn the practice of a person after being charged with violating the law . . . then asking for a declaratory judgment in an independent cause, with the result that two cases involving the same subject matter are pending at the same time. If such a practice were permitted, it would cause an unnecessary burden on the courts and the law enforcement authorities. In the New York case of *Woollard v. Schaffer Stores Co.*, reported in 272 N.Y. 304, 5 N.E. 2d 829, 832, 109 A.L.R. 1262, 1265, the Court said: '*When, however, another action between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of an action for a declaratory judgment, the court abuses its discretion when it entertains jurisdiction.*' (My emphasis).