Max SHAVER and Shelia Shaver *v.* Luther SPANN, Jr., and Rosalie Spann

CA 90-444                                              813 S.W.2d 280

Court of Appeals of Arkansas
Division I
Opinion delivered July 3, 1991

*Odell Pollard, P.A.*, and *Margaret Bunn Mead*, for appellants.

*Brazil, Clawson & Adlong*, by: *Charles E. Clawson, Jr.*, for appellees.

MELVIN MAYFIELD, Judge. This is the second appeal of this case. Max and Shelia Shaver were also the appellants in the first appeal, where an unpublished opinion was handed down February 28, 1990, by a division of this court, which reversed and remanded the case to the chancery court from which it came. It is from the order of the chancery court on remand that the appellants bring this new appeal.

As required by Rule 9(d) of the Rules of the Arkansas Supreme Court and Court of Appeals, the appellant has also abstracted in this second appeal the pertinent portions of the record filed in the first appeal. Based upon the abstract and our

opinion in the first appeal, we make the following statement of the matters now before us.

The original suit concerned appellants' purchase on July 11, 1987, of a dairy farm, 137 head of cattle, and various items of personal property and equipment for the sum of $300,000.00. Appellants testified that shortly after purchase, they discovered the dairy herd was heavily infected with mastitis, and the entire herd was sold for slaughter by court order in January of 1988. In December of 1987, the appellants filed suit alleging breach of express and implied warranties and seeking rescission and reimbursement for their down payment and necessary expenses. After appellants presented their evidence, the chancellor granted appellees' motion for a "directed verdict."

In the first appeal, we reversed the trial court's order granting the "directed verdict" and remanded the case. Our opinion simply stated "Reversed and Remanded." However, the mandate issued by our clerk stated that the case was remanded "for further proceedings . . . not inconsistent" with our opinion.

In the early case of *Rushing* v. *Horner*, 135 Ark. 201, 204 S.W. 1145 (1918), the court in a second appeal from chancery court, construed its remand for a new trial in the first appeal as follows:

> When a cause is remanded broadly for a new trial, all the issues in the case are open for trial anew, the same as if there had been no trial. "The case stands as if no action had been taken by the lower court."

135 Ark. at 205 (citations omitted). But in *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979), the court reviewed cases relating to remand of chancery cases for further proof and then held:

> Where a judgment [or decree] is reversed for error in the proceedings in the court below and remanded for proceedings according to law and not inconsistent with the opinion of the court, it is always understood that the proceedings in the court below, prior to the fault or error which is ascertained by this court to exist, are in no wise reversed or vacated by the adjudication of the appellate court, but the fault or error adjudicated is the point from

which the cause is to progress anew . . . .

266 Ark. at 568 (citation omitted). As the court explained in *Ferguson*, the above rule results from the fact that chancery cases are reviewed de novo on appeal and all the issues raised in the court below are before the appellate court, and it determines what the decision of the chancellor should have been and renders the decree the chancellor should have made. 266 Ark. at 564. But, the opinion in *Ferguson* also pointed out that the appellate court has the power to remand "any case in equity or further proceedings, including hearing additional evidence." *Id.* at 565.

In our unpublished opinion in the first appeal, we discussed the "test" which the appellate courts in this state have said should be used to determine whether a motion for "directed verdict" should be granted. We also pointed out that since we were reviewing an appeal from a chancery court, where there was no jury, the motion before us was "technically a motion to dismiss" the claim filed by plaintiff below; however, we said the "test" was the same as used when a motion for "directed verdict" was made in a case being tried by a jury. We then pointed to comments made by the chancellor when granting the motion for "directed verdict" in the first trial of the present case and said the judge's statements revealed that he "weighed" the plaintiff's evidence instead of giving that evidence its "strongest probative force," and we said this demonstrated that the judge failed to "apply the proper test" to the evidence.

Apparently relying upon the mandate, the appellees filed a new motion in the trial court stating that the court should use the test which we referred to in our opinion and make a new determination of whether the court should grant a directed verdict or dismiss the appellants' complaint on the grounds that they had not established a prima facie case at the first trial. The appellants filed a response asking that the trial court deny appellees' motion.

Appellants also filed an amended complaint stating that when the court dismissed their complaint at the first trial, the court also entered a judgment against appellants on the promissory note given for the purchase of the dairy farm and cattle and ordered for payment of the note a sale of the property purchased upon which appellees held a security interest. Appellants also

alleged that the collateral had been sold at public auction; that at this point there could be no rescission of the purchase agreement; that appellees were liable to appellants for express and implied warranties as to the condition of the cattle sold to appellants; and that they should have judgement against appellees for damages and expenses incurred.

At the same time the amended complaint was filed, appellants also filed a motion to transfer this case from chancery to circuit court for the reason that the amended complaint stated a claim for money damages only and that was a claim exclusively cognizable in a court of law.

The appellees filed a response to the amended complaint generally denying the allegations in the complaint with regard to the right to recover damages but admitting the allegations of the amended complaint in regard to the judgment rendered against appellants and the sale at public auction of the dairy farm and equipment which had been purchased by appellants. The appellees also filed a response to appellants' motion to transfer to law, alleging that the motion should be denied.

After the above matters had been filed, a hearing was had at which the chancellor first considered appellees' motion for directed verdict. No additional testimony was taken and after hearing arguments of counsel, the trial judge stated that, in explaining his reasoning at the first trial, it did look as if he was weighing the evidence, but he did intend to apply the proper test. Stating that he was now applying the proper test, the judge reached the same conclusion and again granted the appellees' motion.

Appellants then asked the chancellor to consider their motion to transfer, stating that some indication was needed in that regard since they intended to appeal and would argue there that the matter should be transferred. The judge, however, said he did not think he could give a ruling "which is strictly prospective" but added that if the case came back he did not feel that a transfer to circuit court would be warranted.

We now address the arguments presented by the parties in this new appeal. The appellants first argue that the trial court erred in dismissing their complaint. They say, given its strongest

probative force, their evidence established a prima facie case of breach of express warranty (Ark. Code Ann. § 4-2-313(1) (1987)), breach of implied warranty of good health (Ark. Code Ann. § 4-2-316(3)(d)(ii)), and breach of implied warranty of merchantability and fitness for a particular purpose (Ark. Code Ann. § 4-2-314). Appellants contend the appellees' representations about the health of the herd were express warranties that all 137 head of cattle were healthy, except four which were identified as having mastitis; that the appellees knew of the disease or sickness; that the appellees knew appellants would use the cattle for milk production to make their living; and that the appellants relied upon appellees' word in proceeding with the purchase.

At trial, appellant Shelia Shaver testified that appellee Luther Spann stated the cattle were relatively young, that he was treating three cows for mastitis, and that the cattle had an occasional flare-up of mastitis. She said she asked about a cow out in the field with a swollen quarter, and Mr. Spann stated that cow could not be cured of mastitis and it would have to be sold; that when Mrs. Shaver asked for the records on the herd, Mr. Spann said he didn't bother keeping any; and that when she asked for the State Health Department records, the appellees said they had burned them. Max Shaver testified that when his wife asked Mr. Spann why he hadn't told them the truth, he replied, "If I had, you wouldn't have bought it."

Also, there was evidence that the appellees had requested laboratory testing of six special milk samples pulled from their herd during June 1987; that the samples contained excessive counts on the Wisconsin Mastitis Test (WMT) and Direct Microscopic Somatic Cell Count (DMSCC) during the month prior to the sale; that the health department had sent appellees a warning letter on June 2, 1987, advising of the unacceptable DMSCC; and advising them that if the health department received three out of five regular samples in violation of the acceptable count, it would suspend the dairy's permit to sell Grade A milk.

In *Henley's Wholesale Meats, Inc.* v. *Walt Bennett Ford, Inc.*, 4 Ark. App. 362, 631 S.W.2d 316 (1982), we set out the following test to determine when a "directed verdict" should be granted at the close of the plaintiff's evidence:

The test is to take that view of the evidence that is most favorable to the party against whom the verdict is sought and to give it its highest probative value, taking into account all reasonable inferences deducible from it, and to grant the motion only if the evidence viewed in that light would be so [in]substantial as to require that a jury verdict for the party be set aside. *Bradford* v. *Verkler*, 273 Ark. 317, 619 S.W.2d 636 (1981). The applicable rule, stated in other terms, is that the duty of the trial court, sitting without a jury, when asked to give a "directed verdict" at the close of the plaintiff's case, is to consider whether the plaintiff's evidence, given its strongest probative force, presents a *prima facie* case. *McCollough* v. *Ogan*, 268 Ark. 881, 596 S.W.2d 356 (Ark. App. 1980), and *Werbe* v. *Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950). As was pointed out in *Minton* v. *McGowan*, 253 Ark. 945, 490 S.W.2d 136 (1973), it is not proper for the court to weigh the facts at the time the plaintiff completes his case, and the motion should be denied if it is necessary to consider the weight of the testimony before determining whether the motion should be granted.

4 Ark. App. at 363. The above quotation comes from an opinion in a case appealed from a nonjury trial in circuit court, and the present case is an appeal from chancery court. However, the test is the same. *See* Newbern, *Arkansas Civil Practice and Procedure* § 23-12 (1985), which makes the following explanation:

Either party may challenge the sufficiency of the other's evidence by moving for a directed verdict, in a jury trial, or dismissal, in a bench trial. The directed verdict and this sort of dismissal are provided in Ark. R. Civ. P. 50(a). While the case law which formerly provided for directed verdict and the statute provided for chancery dismissal were different in several respects from the rule, the rule does not specifically address the test for determining the sufficiency of the evidence, and, as the rule has thus not changed the law with respect to the test, cases decided prior to the advent of the rule should still be authoritative on that point.

The case of *Minton* v. *McGowan*, 253 Ark. 945, 490 S.W.2d

136 (1973), cited as authority in *Henley's Wholesale Meats* v. *Walt Bennett Ford*, *supra*, was an appeal from a chancery court. The test set out in the opinion of *Minton* v. *McGowan*, is as follows:

> Since this case involves a demurrer to the evidence, it is the duty of the trial court to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence, when so considered, fails to make a *prima facie* case. . . . At the time the plaintiff completes his case, it is not proper for the court to weigh the facts, and the motion should be denied if it is necessary to consider the weight of the testimony before determining whether the motion should be granted.

253 Ark. at 946 (citations omitted). *See also Werbe* v. *Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950).

We think appellants' evidence when viewed in the light of the above decisions is sufficient to establish a prima facie case and the trial court erred in granting the appellees' "motion for directed verdict" or motion to dismiss.

The second point argued by the appellants in the brief in this court is that this matter should be transferred from chancery to circuit court. In considering this point, we must keep in mind our role in the appeal of chancery cases. In *Hall* v. *Staha*, 303 Ark. 673, 800 S.W.2d 396 (1990), the Arkansas Supreme Court said:

> Chancery cases are tried de novo on appeal, and we will not reverse the chancellor's findings unless clearly erroneous. *Conway Corp* v. *Construction Engineers, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1989), *cert. denied*, 494 U.S 1080, 110 S.Ct. 1809 (1990). This court does not normally remand a case to chancery court, but rather we try the case de novo and render the decree that should be rendered below. The usual practice is to end the controversy by final judgment or by directions to the trial court to enter a final decree. This rule, however, is not imperative and this court, in the furtherance of justice, has the power to remand any case in equity for further proceedings, including hearing additional evidence. *Walt Bennett Ford* v. *Pulaski County*

*Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981).

303 Ark. at 679. See also *Ferguson* v. *Green, supra*. As we must reverse the chancellor again, we know from the last proceedings that the question of transferring this case to circuit court is bound to be presented again. Thus, we believe we should follow the usual practice, deciding in this de novo appeal all the issues presented that the record demonstrates are at this point ready for decision.

We find the case of *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), on the question of whether this case should be transferred to circuit court, instructive. In that case, an attorney who had represented the appellee in a divorce action, argued that the chancellor lacked jurisdiction to award appellee damages for the fraud the attorney was found to have perpetrated against the appellee in connection with the divorce litigation. The attorney had in chancery court made no motion to transfer the claim to circuit court and had not demanded a trial by jury. The Arkansas Supreme Court stated that the issue for determination on appeal was whether the chancellor had the *power* to determine the matter.

In its opinion, the court discussed *Chamberlain* v. *Newton County*, 266 Ark. 516, 587 S.W.2d 4 (1979). In that case the appellant filed suit for an injunction but ultimately amended her complaint to ask only for damages. On appeal, the supreme court said appellant no longer claimed the right to an equitable remedy and therefore the chancery court lacked jurisdiction because there was no equitable relief being sought to which the tort claim might have been considered incidental for the purpose of exercising the clean-up doctrine.

In *Liles*, the court also cited *Bierbaum* v. *City of Hamburg*, 262 Ark. 532, 559 S.W.2d 20 (1977). That case also began as a suit for an injunction. The chancellor denied the injunction and, recognizing that the only issue remaining was the amount of compensation to which the appellant was entitled, transferred the case to the circuit court. On appeal the appellant argued the chancellor should have retained the case to determine the damages. The supreme court held that the chancellor not only could determine the damages aspect of the case but that he must do so *absent any request* that the case be transferred and must do

so despite the prospect that the granting of any equitable remedy might have "faded away."

And in *Liles* the court cited in its opinion *Crittenden County* v. *Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984), which said it is only when the court of equity is "wholly incompetent" to consider the matter that "we will permit the issue of competency to be raised for the first time on appeal."

The Arkansas Supreme Court in *Liles* then summed up its holding on this issue as follows.

> Viewed together, these cases demonstrate that we have come to the position that unless the chancery court has no tenable nexus whatever to the claim in question we will consider the matter of whether the claim should have been heard there to be one of propriety rather than one of subject matter jurisdiction. We will not raise the issue ourselves, and we will not permit a party to raise it here unless it was raised in the trial court.

289 Ark. at 175-76.

In the instant case, appellants first sought rescission of their contract. Later, appellants amended their complaint to one for money damages only and made a written motion to transfer their cause of action to circuit court. The appellees argue that if this case is remanded, the chancery court would still have jurisdiction under the clean-up doctrine to determine the issues of damages. While we do not think our supreme court has decided that precise issue, we do not think we have to know the answer to that point in order to determine the transfer issue in this case.

We think the question here is whether this case should be transferred to law in the furtherance of justice. This issue is not based on the power of either the chancery or circuit court but is one of discretion. The court in *Liles* clearly did not foreclose this time-honored procedure. The opinion in that case said unless the chancery court has no tenable nexus the question of transfer to circuit court will be considered "one of propriety" and "we will not permit a party to raise it here unless it was raised in the trial court." And in *UHS of Arkansas* v. *Charter Hospital of Little Rock*, 297 Ark. 8, 759 S.W.2d 204 (1988), the supreme court said "it is clear that the chancery court abused its discretion in

exercising jurisdiction." 297 Ark. at 13. To make the point clear, in the case of *In re Porter*, 298 Ark. 121, 765 S.W.2d 944 (1989), the court cited *UHS of Arkansas* and said:

> There we required a chancery court to transfer to the circuit court a case in which a declaratory judgment had been sought with respect to the same issues pending in a circuit court proceeding. In that case neither court had been assigned exclusive jurisdiction by statute of the issues in question.

298 Ark. at 124. Thus, the supreme court has twice held, since the *Liles* decision, that cases may be transferred between chancery and circuit court based upon the proper exercise of discretion. In the present case the appellants filed a motion to transfer to circuit court and they argue on appeal that the chancellor erred in failing to grant the motion. In that connection, we need to consider a final point.

The record discloses that counsel for appellants and appellees also disagree as to what matters should be open if this case is remanded again. Counsel for appellants thought a new trial would be proper. He explained that two years have already elapsed since the evidence was first presented and that two more years would likely elapse before it could proceed further in the trial court. He pointed out that not only has the cause of action changed from one for rescission to one for damages but the extent of damage and the proof thereof have changed.

In *Rushing v. Horner, supra*, the court said:

> On a reversal of a cause by this court it seldom occurs that the same is remanded for a new trial, but when such is the direction of this court, then the case stands for trial precisely the same as if there had never been any trial.

135 Ark. 206.

In the present case because of the lapse of time, the nature of the claim and the relief now sought, we think this case should be remanded for a new trial. To go back to and try to finish a four-year old case would be courting disaster. It also seems proper for both sides to be able to present what is now a suit for money damages only to a jury if either side so desires. Since we

remand for a new trial, and for many of the same reasons, we also find in this de novo review that this court should, in the exercise of our discretion and in the furtherance of justice, transfer this case to circuit court.

Reversed and remanded for a new trial, with directions that the chancery court transfer this case to circuit court for the new trial.

COOPER and JENNINGS, JJ., agree.